Vincent J. Conte, #434317/511290A
New Jersey State Prison
Second & Cass Streets
P.O. Box 861
Trenton, New Jersey 08625-0861
Attorney for Plaintiff (Appearing Pro Se)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON VICINAGE

| | | |
|---|---|---|
| VINCENT J. CONTE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | CASE NO.: |
| v. | : | |
| | : | |
| Z. GOODWIN, Senior Corrections Officer; and M. NAPIERALA, Senior Corrections Officer, | : : : | COMPLAINT (featuring CERTIFICATION OF ENTIRE CONTROVERSY, DEMAND FOR JURY TRIAL, and VERIFICATION) |
| Defendants. | : | |

Plaintiff Vincent J. Conte (residing at New Jersey State Prison in Trenton, New Jersey), complains against Defendants herein, alleging, under penalty of perjury, as follows:

INTRODUCTION

1. The present civil action alleges the violation of Plaintiff's right against the infliction of cruel and unusual punishments, as guaranteed by the Eighth Amendment to the United States Constitution (enforceable through 42 U.S.C. § 1983); and as guaranteed by Article I, Paragraph 12, of the New Jersey Constitution (enforceable through N.J. Stat. Ann. § 10:6-2d and 28 U.S.C. § 1367(a)). These constitutional violations stem from

1

the denial of emergency medical treatment by two corrections officers, causing Plaintiff to suffer serious injuries, including physical damage to his heart tissue, reduced life expectancy, physiological handicaps, and mental anguish.

2.   To remedy the illegal behavior alleged, Plaintiff seeks the full measure of damages, as well as injunctive relief preventing Defendants from committing future misconduct.

## JURISDICTION, VENUE, AND VICINAGE

3.   This Court has jurisdiction over Plaintiff's federal claim (Count I) under 28 U.S.C. §§ 1331 and 1343(a)(4).

4.   This Court has jurisdiction over Plaintiff's pendant state-law claim (Count II) under 28 U.S.C. § 1367(a).

5.   All acts complained of herein occurred within the District of New Jersey, Trenton Vicinage, making that venue and vicinage entirely proper (see 28 U.S.C. § 1391(b)(2)).

## PARTIES

6.   During the cause of action, Plaintiff Vincent J. Conte was in the custody of the New Jersey Department of Corrections (DOC) and was confined at New Jersey State Prison (NJSP) located at Second and Cass Streets in Trenton.

7.   At all times mentioned herein, Defendants Z. Goodwin and M. Napierala were Senior Corrections Officers; were employed by DOC (making them state actors); were assigned to perform job-related duties on Plaintiff's housing unit, 2-Left; and were

personally involved in the misconduct alleged.

8. At all times mentioned herein, Defendants were required to follow and honor federal laws, including the Eighth Amendment to the United States Constitution.

9. At all times mentioned herein, Defendants were required to follow and honor state laws, including Article I, Paragraph 12, of the New Jersey Constitution.

10. Plaintiff sues Defendants singly and jointly for acts committed in their individual and official capacities.

## FACTUAL BACKGROUND

11. On December 2, 2018, an NJSP sergeant ordered Plaintiff to supply urine for drug testing. Defendants were assigned to oversee the urine-collecting process.

12. Per DOC regulations, Plaintiff was required to provide his urine sample within two hours (see N.J. Admin. Code § 10A:3-5.11(i)). His failure to abide by that urination deadline subjected him to disciplinary action, exposing him to 180 days of administrative segregation and other sanctions (see N.J. Admin. Code §§ 10A:3-5.11(i) and 10A:4-4.1(a)(2)(*.259)).

13. At the beginning of his two-hour urination window, Plaintiff suffered cardiovascular obstruction, greatly diminishing his heart function, blood flow, and oxygen uptake.

14. Due to his heart attack, Plaintiff experienced characteristic symptoms, including chest pains, shortness of

3

breath, and profuse sweating. Plaintiff reacted by clutching his chest, gasping for oxygen, and wiping his sweat.

15. Plaintiff's heart attack was captured on his housing unit's video-recorded surveillance system.

16. Plaintiff immediately brought his heart attack to the attention of Defendants. Specifically, Plaintiff advised Defendants of his chest pains, shortness of breath, and profuse sweating; indicated that his heart was malfunctioning; pointed out his physical manifestations (namely, his chest-clutching, oxygen-gasping, and sweat-wiping); and expressed his fear of dying. Defendants thus had actual knowledge of Plaintiff's heart attack or, at the very least, were placed on notice that Plaintiff's medical issue jeopardized his health and safety.

17. Upon bringing his heart attack to the attention of Defendants, Plaintiff requested that Defendants provide immediate medical treatment by calling an emergency code (Code 53) pursuant to DOC procedures. Defendants laughed at Plaintiff's request for emergency medical attention, poking fun at Plaintiff's heart attack and associated symptoms.

18. Despite Plaintiff's serious medical needs, Defendants advised Plaintiff that no medical attention would be provided unless and until Plaintiff submitted his urine sample.

19. Plaintiff protested, explaining that medical staff had diagnosed him with having an enlarged prostate (known as

4

prostatic hypertrophy). Plaintiff explained that his enlarged prostate prevented him from easily urinating. Defendants nevertheless conditioned Plaintiff's medical treatment on his urine sample (that is, on his ability to urinate).

20. In light of the condition imposed upon him by Defendants, Plaintiff strove mightily to urinate. Plaintiff strained himself beyond his biomechanical limits, causing him to defecate. Defendants responded with laughter, advising surrounding inmates that Plaintiff had defecated himself.

21. Finally, after 90 minutes of straining, Plaintiff succeeded in providing his urine sample. At that point (i.e., after denying urgently needed medical care for 90 minutes), Defendants issued Plaintiff an ad hoc medical pass.

22. Plaintiff's 90-minute medical deprivation was captured on his housing unit's video-recorded surveillance system.

23. Had Defendants called an emergency code, Plaintiff would have been transported to the infirmary via wheelchair or gurney. However, by issuing an ad hoc medical pass instead of calling an emergency code, Defendants forced Plaintiff to walk to the infirmary while in cardiac distress.

24. The infirmary was located approximately 500 feet from Plaintiff's housing unit. Plaintiff's lengthy walk to the infirmary subjected his heart to significant taxation.

25. Plaintiff barely survived his 500-foot walk to the

5

infirmary, almost collapsing upon arrival. Medical staff quickly intervened and attended to Plaintiff's medical emergency. Notably, such medical staff, as well as an NJSP major, expressed dismay that no emergency medical code had been called and that Plaintiff was forced to walk to the infirmary instead of being transported via wheelchair or gurney.

26. Medical staff immediately called 9-1-1, notified the 9-1-1 operator of Plaintiff's heart attack, and requested an ambulance. Medical staff also performed an electrocardiogram (EKG) on Plaintiff and provided Plaintiff with three nitroglycerin tablets to dilate his blood vessels.

27. Shortly thereafter, EMTs arrived at the prison and transported Plaintiff, by ambulance, to Saint Francis Medical Center. An emergency medical examination was conducted at Saint Francis, during which time Plaintiff was diagnosed as having coronary artery disease with 99% blockage to his left anterior descending artery. A drug-eluting stent was then implanted to eliminate the blockage and restore normal blood flow.

28. Upon information and belief, Plaintiff's 90-minute delay in treatment (particularly Plaintiff's 90-minute delay in receiving nitroglycerin medication), combined with Plaintiff's walk to the prison infirmary (which placed undue stress on his cardiovascular system), caused Plaintiff to suffer twice as much damage to his heart tissue. In other words, Plaintiff's heart

6

damage would have been greatly reduced had Defendants called an emergency code at the inception of his heart attack.

29. In addition to inflicting increased heart damage, Defendants caused Plaintiff to suffer related injuries, including reduced life expectancy; physiological handicaps such as respiratory difficulties, dizziness, disequilibrium, and reduced mobility; and severe mental anguish. Upon information and belief, these symptoms would have been negligible or nonexistent absent the misconduct alleged herein.

30. By delaying Plaintiff's medical treatment by 90 minutes, Defendants acted with deliberate indifference to Plaintiff's health and safety, causing him significant injury.

31. By issuing an ad hoc medical pass instead of calling an emergency code (i.e., by forcing Plaintiff to walk to the infirmary while experiencing cardiovascular obstruction), Defendants acted with deliberate indifference to Plaintiff's health and safety, causing him significant injury.

32. Before bringing suit against Defendants, Plaintiff exhausted his administrative remedies, thus complying with the Prison Litigation Reform Act (see 42 U.S.C. § 1997e(a)).

33. Plaintiff's administrative exhaustion included, among other things, his filing of an inquiry, grievance, and appeal pursuant to designated DOC and NJSP procedures. Such administrative remedies were assigned ID Nos. NJSP-18035615,

NJSP-18035619, NJSP-18035622, and NJSP-18037521.

34. In addition to filing the foregoing administrative remedies, Plaintiff submitted letters of complaint to DOC's Special Investigations Division (SID); to the Corrections Ombudsman; to DOC's Human Resources Department; and to other DOC-related entities, departments, and individuals.

35. Plaintiff's remedies and letters resulted in an internal investigation being conducted by DOC/SID personnel.

36. Pursuant to said investigation, Plaintiff was interviewed on camera concerning the misconduct by Defendants.

37. Upon information and belief, video footage of Plaintiff's interview (as captured by DOC/SID investigators) and of Plaintiff's heart attack and 90-minute medical deprivation (as captured by his housing unit's surveillance system) were preserved on CD, DVD, flash memory, or cassette, with such media being in possession of DOC/SID investigators.

38. Upon information and belief, DOC/SID investigators possess other evidence substantiating Plaintiff's cause of action against Defendants, including witness statements, investigative reports, and medical records.

COUNT I - VIOLATION OF UNITED STATES CONSTITUTION

39. Through their actions or inactions, Defendants were deliberately indifferent to Plaintiff's serious medical needs and thereby violated Plaintiff's right against the infliction of

cruel and unusual punishments, as guaranteed by the Eighth Amendment to the United States Constitution.

40. In violating Plaintiff's Eighth Amendment rights, Defendants acted with reckless or callous indifference thereto, thus subjecting Defendants to individual punitive damages.

## COUNT II - VIOLATION OF NEW JERSEY CONSTITUTION

41. Through their actions or inactions, Defendants were deliberately indifferent to Plaintiff's serious medical needs and thereby violated Plaintiff's right against the infliction of cruel and unusual punishments, as guaranteed by the New Jersey Constitution, specifically, Article I, Paragraph 12.

42. In violating Plaintiff's state-law rights, Defendants acted with reckless or callous indifference thereto, thus subjecting Defendants to individual punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court issue judgment against Defendants, as follows:

A. declaring that Defendants violated Plaintiff's constitutional rights (as alleged in Counts I and II);

B. injunctive relief preventing Defendants and their successors from committing future unconstitutional acts;

C. compensatory damages in the amount of $2.5 million, to be assessed against Defendants jointly and severally;

D. punitive damages in the amount of $10 million, to be

9

assessed against all Defendants qualifying therefor;

    E.    costs for bringing suit; and

    F.    such other relief as the Court deems proper.

                                              Vincent J. Conte

Dated:  February 26, 2019

## CERTIFICATION OF ENTIRE CONTROVERSY

Pursuant to L. Civ. R. 11.2, Plaintiff certifies that this civil action constitutes the entire controversy.

                                              Vincent J. Conte

Dated:  February 26, 2019

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands trial by jury regarding any and all factual issues.

                                              Vincent J. Conte

Dated:  February 26, 2019

## VERIFICATION

Plaintiff verifies, under penalty of perjury, that the facts herein are true to the best of his knowledge.

                                              Vincent J. Conte

Dated:  February 26, 2019