NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| VINCENT J. CONTE, | |
| Plaintiff, | Civ. No. 19-8333 |
| v. | **OPINION** |
| ZACHARY GOODWIN *et al.*, | |
| Defendants. | |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss the Amended Complaint filed by Defendants Zachary Goodwin, Marek Napierala, Marcus O. Hicks ("Commissioner Hicks"), New Jersey Department of Corrections ("NJDOC"), and New Jersey State Prison ("NJSP") (collectively, "Defendants"). (ECF No. 38.) Plaintiff Vincent J. Conte ("Plaintiff") opposes. (ECF No. 42.) The Court has decided this matter based upon the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendants' Motion to Dismiss (ECF No. 38) is granted in part and denied in part.

## BACKGROUND

### I.   Factual Background

This case arises from a medical episode Plaintiff experienced in 2018. Plaintiff is an inmate at NJSP in Trenton, New Jersey. (Am. Compl. ¶ 7, ECF No. 29.) NJSP is a state prison operated by NJDOC. (*Id.* at ¶ 8.) Plaintiff alleges that on December 2, 2018, he was ordered by an NJSP sergeant to provide a urine sample for drug testing within a two-hour time period. (*Id.* ¶ 17–18.) At the beginning of this two-hour window, Plaintiff suffered "cardiovascular

obstruction, greatly diminishing his heart function, blood flow, and oxygen uptake." (*Id.* ¶ 19.) Plaintiff displayed characteristic symptoms of a heart attack, including chest pains, shortness of breath, and profuse sweating. (*Id.*) Plaintiff also clutched his chest, gasped for oxygen, and wiped his sweat. (*Id.* ¶ 20.)

Defendants Goodwin and Napierala ("Officers") were the corrections officers assigned to the facility where Plaintiff was required to provide his urine sample. (*Id.* ¶ 17.) Plaintiff alleges that he "immediately brought his heart attack to the attention of [Officers] Goodwin and Napierala." (*Id.* ¶ 22.) He informed the Officers of his chest pains, shortness of breath, and profuse sweating. (*Id.*) He stated that he felt "as though his heart was malfunctioning" and "expressed his fear of dying in prison." (*Id.*) Plaintiff then asked Officers Goodwin and Napierala to provide immediate medical treatment by calling an emergency code in accordance with NJDOC procedures. (*Id.* ¶ 23.)

In response, Plaintiff alleges that the Officers laughed and "pok[ed] fun at [his] heart attack and associated symptoms." (*Id.*) They told Plaintiff that no medical attention would be provided "unless and until" he submitted his urine sample. (*Id.* ¶ 24.) Plaintiff tried to urinate, but instead defecated. (*Id.* ¶ 28.) The Officers allegedly responded with laughter and told other inmates what had happened. (*Id.*) Plaintiff managed to urinate ninety minutes later. (*Id.* ¶ 29.) Instead of calling an emergency code, the Officers issued Plaintiff an ad hoc medical pass, which required Plaintiff to walk to the infirmary rather than be transported in a wheelchair or gurney. (*Id.* ¶ 33.) Plaintiff asserts that the walk placed "undue stress on his heart and further delayed much-needed medical attention." (*Id.* ¶ 45.)

Upon arrival at the infirmary, medical staff immediately treated Plaintiff. (*Id.* ¶ 35.) A nurse administered an electrocardiogram and gave orders to call 911. (*Id.* ¶¶ 36, 38.) Plaintiff

was then transported by ambulance to St. Francis Medical Center. (*Id.* ¶ 40.) At St. Francis, Plaintiff was diagnosed with ST-Elevation Myocardial Infarction, indicating that one of the major arteries in his heart was blocked. (*Id.* ¶ 40.) The medical staff proceeded with "urgent cardiac catheterization" and placed a stent in Plaintiff's artery to attempt to restore normal blood flow. (*Id.* ¶¶ 41–43.)

Plaintiff maintains that the delay in medical treatment caused by the Officers' refusal to call an emergency code resulted in physical and emotional injuries. (*Id.* ¶¶ 46–48.) As a result of the delay, Plaintiff suffers from reduced life expectancy, respiratory difficulties, dizziness, disequilibrium, and reduced mobility. (*Id.* ¶ 46.) He has also experienced emotional distress, including feelings of shame, humiliation, anger, paranoia, fear, insomnia, anxiety, nervousness, worry, depression, and "loss of enjoyment of a normal life." (*Id.* ¶¶ 47, 91.)

## II.    Procedural History

Plaintiff filed the Complaint *pro se* on March 11, 2019. (ECF No. 1.) The Court screened the Complaint and granted Plaintiff's Motion to Appoint Pro Bono Counsel. (ECF No. 6.) Defendants moved to dismiss the Complaint approximately fifteen months later. (ECF No. 28.)[1]

Plaintiff filed an Amended Complaint on July 20, 2020. (ECF No. 29.) The Amended Complaint alleges seven counts: (1) deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment and 42 U.S.C. § 1983 against Officers Goodwin and Napierala (*id.* ¶¶ 62–64); (2) deliberate indifference to Plaintiff's conditions of confinement in violation of the Eighth Amendment and § 1983 against Officers Goodwin and Napierala (*id.* ¶¶ 65–67); (3) failure-to-intervene under § 1983 against Officers Goodwin and Napierala (*id.* ¶¶

---

[1] After multiple requests for an extension of time to answer the Complaint, Plaintiff requested default on March 10, 2020, which the Clerk entered the following day. (ECF No. 22.) Upon Motion by Defendants, the Court set aside the default on June 22, 2020. (ECF No. 27.)

68–76); (4) failure-to-train under § 1983 against Commissioner Hicks, NJDOC, and NJSP (*id.* ¶¶ 77–83); (5) violation of Article I, paragraph 12 of the New Jersey constitution and the New Jersey Civil Rights Act ("NJCRA") against all Defendants (*id.* ¶¶ 84–86); (6) intentional infliction of emotional distress ("IIED") against all Defendants (*id.* ¶¶ 87–92); and (7) negligence against all Defendants (*id.* ¶¶ 93–97). Plaintiff seeks punitive damages, among other forms of relief.

On August 27, 2020, Defendants filed a Motion to Dismiss the Amended Complaint. (ECF No. 38.) Plaintiff filed an Opposition (ECF No. 42) and Defendants filed a Reply (ECF No. 43). Defendants' Motion to Dismiss the Amended Complaint is presently before the Court.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.*; *see also Iqbal*, 556 U.S. at 679. Finally, the court must assume the veracity of all well-pleaded factual allegations and "determine whether the facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679); *see also Malleus*, 641 F.3d at 563. If the complaint does not demonstrate more than a "mere possibility of misconduct," it must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir.

2009) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

**I.     Section 1983 Claims Against Officers Goodwin and Napierala**

42 U.S.C. § 1983 provides a civil action for the deprivation of rights against every person who, "under color" of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Plaintiff alleges that Officers Goodwin and Napierala violated the Eighth Amendment, as enforced through § 1983, in their official and individual capacities. Plaintiff's Eighth Amendment claims are: (1) that the Officers were deliberately indifferent to his serious medical needs; (2) that the Officers were deliberately indifferent to his conditions of confinement; and (3) that the Officers failed to intervene during his medical emergency. (*See* Am. Compl. ¶¶ 62–76.)

Defendants argue that Officers Goodwin and Napierala are immune from suit in their official capacities under the Eleventh Amendment. (Defs.' Br. at 6, ECF No. 38-4.) They also argue that Plaintiff has not stated a claim under the Eighth Amendment against the Officers individually, and even if Plaintiff had stated a claim, that the officers are entitled to qualified immunity. (*Id.* at 9–16.)

A.     *Claims Against Officers Goodwin and Napierala in Their Official Capacities*

For a violation of § 1983 to occur, a "person" must be "acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). State officers sued in their official capacities are not "persons" for purposes of § 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), "because they assume the identity of the government that employs them," *Hafer v. Melo*, 502 U.S. 21, 25–27 (1991). Moreover, suits against state employees in their official capacities for damages run afoul of the Eleventh Amendment, which prohibits federal

courts from hearing actions against a state. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996). Therefore, the Court dismisses all § 1983 claims against Officers Goodwin and Napierala in their official capacities.

Section 1983, however, permits suits against state employees as individuals. *See Hafer*, 502 U.S. at 30–31. So, the Court will next consider whether Plaintiff has adequately pled his Eighth Amendment claims against Officers Goodwin and Napierala individually.

B.      *Deliberate Indifference to Plaintiff's Serious Medical Needs*

Plaintiff's first claim under the Eighth Amendment is that Officers Goodwin and Napierala were deliberately indifferent to his serious medical needs. From the outset, the Court notes that it previously concluded that Plaintiff's deliberate indifference to serious medical needs claim withstood Federal Rule of Civil Procedure 12(b)(6) scrutiny. In 2019, Plaintiff filed an Application to Proceed *In Forma Pauperis*. (ECF No. 1-2.) As required, the Court screened Plaintiff's Complaint for viable claims. *See* 28 U.S.C. § 1915(e)(2)(B). The Court concluded that the Complaint stated an Eighth Amendment deliberate indifference claim against Officers Goodwin and Napierala. (Order Appointing Pro Bono Counsel, ECF No. 6.) Although Plaintiff has since amended his Complaint, the Amended Complaint only adds defendants and counts; it does not alter the original claim against Officers Goodwin and Napierala. In line with the Court's previous conclusion and explained in detail below, the Court concludes that Plaintiff has sufficiently pled that Officers Goodwin and Napierala were deliberately indifferent to his serious medical needs.

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Deliberate indifference can occur when medical personnel respond to a prisoner's needs, or when corrections officers

"intentionally deny[] or delay[] access to medical care." *Id.* at 104. A successful deliberate indifference to serious medical needs claim requires that (1) the medical condition be serious, and (2) the defendants were deliberately indifferent. *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

First, the Court concludes that Plaintiff's medical condition is apparently serious. A medical need is serious when "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations and citations omitted). The seriousness of a plaintiff's medical need "may also be determined by reference to the effect of denying the particular treatment." *Id.* For example, a medical condition is serious if the denial or delay in treatment results in the "unnecessary and wanton infliction of pain" or causes "a life-long handicap or permanent loss." *Id.* (internal quotations and citations omitted).

Plaintiff suffered a "very serious type of heart attack during which one of the heart's major arteries is blocked." (Am. Compl. ¶ 40.) Although Plaintiff had not been diagnosed with a heart condition at the time of his heart attack, Plaintiff alleges that he exhibited outward physical symptoms such as chest pains, shortness of breath, and profuse sweating. (*Id.* ¶ 20.) He clutched his chest, gasped for air, and wiped his sweat. (*Id.*) In addition, he told Officers Goodwin and Napierala that he felt "as though his heart was malfunctioning." (*Id.* ¶ 22.) The Court concludes that these allegations, taken together, amount to a medical need "so obvious that a lay person," such as Officer Goodwin or Napierala, "would easily recognize the need for a doctor's attention." *See Lanzaro*, 834 F.2d at 347. This conclusion is further supported by the fact that Plaintiff alleges that the delay caused "permanent loss," in the form of reduced life expectancy,

and potential "life-long handicaps" such as respiratory difficulties, dizziness, disequilibrium, and reduced mobility. (Am. Compl. ¶ 46.)

Second, the Amended Complaint adequately pleads deliberate indifference. In order to act with deliberate indifference, a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In other words, a prison official must actually be aware of the prisoner's serious medical condition and "intentionally refuse to provide appropriate care." *Lanzaro*, 834 F.2d at 346.

Defendants argue that Officers Goodwin and Napierala could not have been deliberately indifferent because they were unaware that Plaintiff was experiencing a heart attack. (Defs.' Br. at 5–7.) However, it is plausible based on the allegations in the Amended Complaint that the Officers knew that a "substantial risk of harm" existed when they delayed Plaintiff's medical treatment. *See Farmer*, 511 U.S. at 837. As stated, Plaintiff exhibited outward physical symptoms, including chest pains, shortness of breath, and profuse sweating, which he reacted to by clutching his chest, gasping for air, and wiping his sweat. (Am. Compl. ¶ 20.) He told Officers Goodwin and Napierala that he felt "as though his heart was malfunctioning" and "expressed his fear of dying in prison." (*Id.* ¶ 22.) He requested that the Officers provide immediate medical treatment by calling an emergency code. (*Id.* ¶ 23.) And after he provided his urine sample ninety minutes later, Plaintiff maintains that the Officers refused to call an emergency code and issued him an ad hoc medical pass. (*Id.* ¶¶ 29, 33.) Viewing these facts in the light most favorable to Plaintiff, it is plausible to infer that Officers Goodwin and Napierala understood that a substantial risk of harm existed when they delayed Plaintiff's needed medical

care. For that reason, Plaintiff has adequately pled that Officers Goodwin and Napierala were deliberately indifferent to his serious medical needs.

      C.    *Deliberate Indifference to Plaintiff's Conditions of Confinement*

      Plaintiff's second claim under the Eighth Amendment is that Officers Goodwin and Napierala were deliberately indifferent to his conditions of confinement. A claim regarding prison conditions "does not rise to the level of an Eighth Amendment violation unless: (1) the prison official deprived the prisoner of the minimal civilized measure of life's necessities; and (2) the prison official acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to her future health." *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016) (citation omitted). The deliberate indifference standard is the same across different Eighth Amendment claims. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

      The Court concludes that Plaintiff has adequately pled his claim of deliberate indifference to conditions of confinement. First, if Plaintiff's allegations are taken as true, Officers Goodwin and Napierala may have deprived Plaintiff "of the minimal civilized measure of life's necessities." *See Parkell*, 833 F.3d at 335. The deprivation of the minimal civilized measures of life's necessities includes the denial of "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety." *Griffin v. Vaughn*, F.3d 703, 709 (3d Cir. 1997). Plaintiff alleges that Officers Goodwin and Napierala denied him medical care when he was having a heart attack. (*See* Am. Compl. ¶¶ 19–33.) This denial, which exposed Plaintiff to "a substantial risk of serious damage to [his] future health," *see Parkell*, 833 F.3d at 335, sufficiently supports Plaintiff's claim that he was deprived of the "minimal civilized measures of life's necessities." *See id.* Second, as discussed, the Amended Complaint adequately pleads

deliberate indifference. Accordingly, the Court concludes that Plaintiff has stated a claim of deliberate indifference to conditions of confinement against Officers Goodwin and Napierala.

     D.    *Failure to Intervene*

Plaintiff's third claim under the Eighth Amendment is that Officers Goodwin and Napierala each failed to intervene to stop the other from delaying Plaintiff's medical treatment. "[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). Although "[i]t is well-established . . . that both police and corrections officers must 'take reasonable steps to protect a victim from another officer's use of excessive force,'" *see Weimer v. Cnty. of Fayette*, 972 F.3d 177, 191 (3d Cir. 2020) (citations omitted), "the Third Circuit has not extended the duty to intervene beyond situations involving excessive force," *Armstrong v. Furman*, 2020 WL 5545270, at *7 (W.D. Pa. Sept. 16, 2020) (discussing *Weimer*, 972 F.3d at 191). Thus, failure-to-intervene or failure-to-protect claims arise as a corollary to the use of excessive force or some other form of violence. *See, e.g.*, *Smith*, 293 F.3d at 650–51 (assault by corrections officers); *Knox v. Doe*, 487 F. App'x 725, 728 (3d Cir. 2012) (assault by other inmates); *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 294 (D.N.J. 2015) (excessive force by corrections officers during a strip search).

Here, Plaintiff's allegations do not support a § 1983 failure-to-intervene claim. Although corrections officers have a duty to intervene to protect an inmate "from another officer's use of excessive force," *see Smith*, 293 F.3d at 650, such a duty does not apply to the facts presented in the Amended Complaint. Plaintiff does not allege that either Officer Goodwin or Napierala used excessive force or any physical force at all during their interaction. Moreover, both Officers

directly participated in the alleged misconduct of denying Plaintiff's medical treatment; neither was a non-participant who became aware of the potentially violative conduct and then failed to act. Accordingly, the Court grants Defendants' Motion to Dismiss as to Plaintiff's failure-to-intervene claim against Officers Goodwin and Napierala in their individual capacities.

E.     *Qualified Immunity*

Defendants argue that even if Plaintiff makes out a constitutional claim against Officers Goodwin and Napierala, the Officers are entitled to qualified immunity. (Defs.' Br. at 9–16.) The doctrine of qualified immunity shields government officials who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To resolve a claim of qualified immunity, courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "A right is clearly established for qualified immunity purposes where its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012).

At this stage, the Court cannot conclude that Officers Goodwin and Napierala are entitled to qualified immunity as to Plaintiff's two deliberate indifference claims. As discussed above, Plaintiff has sufficiently alleged plausible Eighth Amendment claims against Officers Goodwin and Napierala. And it is, and on the day in question was, clearly established that delaying medical care for a serious medical condition can violate an inmate's Eighth Amendment rights if

those responsible for the delay showed deliberate indifference. *See Estelle*, 429 U.S. at 104–05 ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care.").

The Court is mindful that questions of qualified immunity should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Here, however, questions remain about the Officers' subjective knowledge of Plaintiff's medical condition that cannot be properly resolved at the pleading stage. *See Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) (explaining that "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis"). Thus, the Court concludes that there is insufficient information at this juncture to determine that Officers Goodwin and Napierala are entitled to qualified immunity as to Counts 1 and 2.

In sum, the Court will grant in part and deny in part Defendants' Motion to Dismiss as to Plaintiff's § 1983 claims against Officers Goodwin and Napierala in their individual capacities. Because Plaintiff has adequately pled his claims of deliberate indifference to serious medical needs and conditions of confinement, and because Officers Goodwin and Napierala are not entitled to qualified immunity for those claims at this stage, the Court denies Defendants' Motion to Dismiss as to Counts 1 and 2. And because Plaintiff has not adequately pled his failure-to-intervene claim, the Court grants Defendants' Motion to Dismiss as to Count 3.

## II.      Failure to Train

Plaintiff also brings claims under § 1983 against Commissioner Hicks, NJDOC, and

NJSP for an Eighth Amendment violation resulting from their failure to train Officers Goodwin

and Napierala. Plaintiff states that if Commissioner Hicks, NJDOC, and NJSP had properly

trained the Officers, Plaintiff may not have been forced to urinate before he received medical

attention. (Am. Compl. ¶ 31.)[2]

There are two general ways in which a supervisor-defendant may be liable for

unconstitutional acts undertaken by subordinates. *Barkes v. First Corr. Med.*, 766 F.3d 307, 316

(3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015. First, a

supervisor-defendant may be liable if he, "with deliberate indifference to the consequences,

established and maintained a policy, custom, or practice which directly caused [the]

constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d

572, 586 (3d Cir. 2004)) (alteration in original). Second, a supervisor-defendant may be

personally liable "if he or she participated in violating the plaintiff's rights, directed others to

violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's

unconstitutional conduct." *Id.* (internal quotations omitted). "Failure-to" claims—failure-to-train,

---

[2] Defendants' Motion to Dismiss and Plaintiff's Opposition both refer to Plaintiff's failure-to-train claim as a "*Monell* claim." (Defs.' Br. at 2–4, ECF No. 38-4; Opp'n at 9–11, ECF No. 42.) *Monell* liability, named for the Supreme Court's decision in *Monell v. New York City Department of Social Services*, 436 U.S. 685 (1978), permits municipal defendants to be held liable under a § 1983 failure-to-train theory for patterns of unconstitutional conduct. *Id.* at 694–95; *Connick v. Thompson*, 563 U.S. 51, 62 (2011). However, *Monell* liability applies only to municipalities, not to states. *See Monell,* 436 U.S. at 690 n.54. Here, NJDOC, NJSP, and Commissioner Hicks are state, not municipal defendants; thus, a *Monell* claim is not viable against them. *See Cipolla v. Hayman*, 2013 WL 1288166, at *6 (D.N.J. Mar. 26, 2013). However, Commissioner Hicks may be liable under a theory of supervisory liability. *See Barkes v. First Corr. Med.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). Accordingly, the Court will examine Plaintiff's § 1983 failure-to-train claim under a theory of supervisory liability.

failure-to-discipline or failure-to-supervise—are generally considered a subcategory of policy or practice, rather than participatory, liability. *Id.* at 316–17 (citations omitted).

A.     *Commissioner Hicks*

As explained, Commissioner Hicks cannot be sued under § 1983 in his official capacity for damages. *See Will*, 491 U.S. at 71. Thus, the Court dismisses the § 1983 failure-to-train claim against Commissioner Hicks in his official capacity.

Moreover, the allegations in the Amended Complaint do not plead a failure-to-train claim against Commissioner Hicks in his individual capacity. According to NJDOC regulations, an inmate is required to provide a urine sample when requested within two hours. N.J. Admin. Code § 10A:3-5.11(i)(1). Any failure to produce the urine sample within the two-hour window exposes an inmate up to 180 days of administrative segregation and other sanctions. *See* §§ 10A:3-5.11(i), 10A:4-4.1(a)(2), 10A:4-5.1(g). Plaintiff's failure-to-train claim against Commissioner Hicks is based on purported deficiencies in the training and implementation of this policy. The Amended Complaint states:

> Had [Commissioner] Hicks provided Corrections Officers like Goodwin and Napierala with proper training in identifying extenuating circumstances that would permit inmates to temporarily bypass drug screenings, Plaintiff could have obtained much-needed medical attention and provide a screening at a later time.

(Am. Compl. ¶ 31.) This statement does not give rise to failure-to-train supervisory liability. Plaintiff does not allege, under the first theory of supervisory liability, that Commissioner Hicks acted with deliberate indifference in establishing and maintaining the policy that directly caused his constitutional harm. *See Barkes*, 766 F.3d at 316. The Amended Complaint includes no information about Commissioner Hicks' role in shaping or implementing the policy and its exceptions, or his knowledge of its consequences. Additionally, Plaintiff does not allege, under the second theory of supervisory liability, that Commissioner Hicks participated in the violation

of his rights, directed others to violate his rights, or had knowledge of and acquiesced to Officers Goodwin and Napierala's actions. For these reasons, the Court concludes that Plaintiff has not stated a failure-to-train claim against Commissioner Hicks as a supervisor. Accordingly, Plaintiff's § 1983 claim against Commissioner Hicks in his individual capacity is dismissed.

> B.    *NJDOC and NJSP*

Plaintiff also brings a failure-to-train claim against NJDOC and NJSP, which are both state agencies. (Am. Compl. ¶¶ 10–11.) States and state agencies are not "persons" within the meaning of § 1983. *Will*, 491 U.S. at 65 (1989). Thus, Plaintiff's failure-to-train claims against NJDOC and NJSP must be dismissed.

## III.    Violation of Article I of the New Jersey State Constitution and the NJCRA

Count 5 of the Amended Complaint alleges violations of Article I Section 12 of the New Jersey Constitution. (Am. Compl. ¶¶ 84–86.) Article I Section 12 prohibits cruel and unusual punishment and is interpreted analogously to the Eighth Amendment. *See Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012). The New Jersey Civil Rights Act ("NJCRA") mirrors § 1983 and "creates a private cause of action for violations of civil rights secured under the New Jersey Constitution[]." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011); N.J. Stat. Ann. § 10:6-2. Courts in New Jersey have interpreted the NJCRA "as having incorporated the Supreme Court's decision in *Will* that, for purposes of § 1983, states and state officials acting in their official capacity are not amendable to suit." *Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 856 (3d Cir. 2014) (citations omitted). Because the standard under the New Jersey Constitution is the same as that under the United States Constitution, the Court will interpret Plaintiff's NJCRA claims analogously to his § 1983 claims. *See Trafton*, 799 F. Supp. 2d at 443–44.

Because Plaintiff has stated § 1983 claims against Officers Goodwin and Napierala in their individual capacities for deliberate indifference to serious medical needs and conditions of confinement, the same claims against Officers Goodwin and Napierala may proceed under the NJCRA. Plaintiff has not stated a § 1983 claim against Commissioner Hicks, NJDOC, or NJSP. Therefore, the Court dismisses all NJCRA claims against those Defendants. And because NJDOC, NJSP, and Officer Goodwin, Officer Napierala and Commissioner Hicks are not amendable to suit in their official capacities under the NJCRA, *see Estate of Lagano*, 769 F.3d at 856, Plaintiff's NJCRA claims against those Defendants are dismissed. *See Murphy v. N.J. Dep't of Corr.,* 2017 WL 2482878, at *2 (D.N.J. June 8, 2017) (dismissing NJCRA claim against NJDOC).

## IV.   Intentional Infliction of Emotional Distress

Count 6 of the Amended Complaint alleges IIED against all Defendants. (Am. Compl. ¶¶ 87–92.) Plaintiff's IIED claim is brought under the New Jersey Tort Claims Act ("NJTCA"), which "modifies the doctrine of sovereign immunity and creates limited situations in which parties may assert tort claims against public entities." *Feinberg v. State of New Jersey*, 644 A.2d 593, 596 (N.J. 1994). To establish a claim for intentional infliction of emotional distress under New Jersey law, a plaintiff must show that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the actions proximately caused emotional distress; and (4) the emotional distress was severe. *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988).

### A.   *Officers Goodwin and Napierala*

The Court finds that Plaintiff has adequately pled his IIED claim against Officers Goodwin and Napierala. First, the allegations in the Amended Complaint support a plausible

inference that Officers Goodwin and Napierala acted either intentionally or recklessly. A defendant acts recklessly when he acts in deliberate disregard of a high degree of probability that emotional distress will follow. *Id.* (citations omitted). Here, Plaintiff alleges that Officers Goodwin and Napierala knew he was having a heart attack, refused to get help, and then laughed. (Am. Compl. ¶¶ 19–24, 28.) These actions may amount to recklessness because Officers Goodwin and Napierala's actions were allegedly deliberate and it is highly probable that a person who is denied medical assistance while experiencing a heart attack may experience emotional distress. *See Buckley*, 544 A.2d at 863.

Second, Officer Goodwin and Napierala's alleged conduct may have been "extreme and outrageous." Conduct is extreme and outrageous if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)). The Court finds that the Officers' alleged conduct, including laughing at Plaintiff's heart attack, his symptoms, and his attempt to provide his urine sample, may "go beyond all possible bounds of decency." *See Buckley*, 544 A.2d at 863.

Third, Officer Goodwin and Napierala's actions plausibly caused emotional distress. According to the Amended Complaint, the Officers' actions "caused Plaintiff to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed." (Am. Compl. ¶ 47.)

Fourth, Plaintiff avers that his emotional distress was severe. In evaluating the plaintiff's emotional distress, mere allegations of "aggravation, embarrassment, an unspecified number of headaches, and loss of sleep" may be insufficient as a matter of law. *Buckley*, 544 A.2d at 863. "If, however, a fact finder could reasonably find that a reaction lasted a 'considerable period after the event' and was more than the insufficient reactions described in *Buckley*, the last prong

of the IIED test would be satisfied." *Smith v. Exxon Mobil Corp.*, 374 F. Supp. 2d 406, 423 (D.N.J. 2005). Here, Plaintiff states that he "continues to suffer severe mental anguish and live in fear that he will not wake up in the morning and/or be tended to should another emergency arise while he is incarcerated." (Am. Compl. ¶ 47.) He has also experienced emotional trauma, physical harm from the delayed treatment of his heart condition, shame, humiliation, embarrassment, anger, overwhelming sense of injustice, paranoia, fear, disappointment, insomnia, anxiety, nervousness, worry, depression, and "loss of enjoyment of a normal life." (*Id.* ¶ 91.) The Court finds that these manifestations, which have continued from late 2018 to at least September 2020, when he filed his Opposition, sufficiently allege extreme emotional distress. (*See* Opp'n at 12–13, ECF No. 42.)

Accordingly, the Court denies Defendants' Motion to Dismiss as to Plaintiff's IIED claim against Officers Goodwin and Napierala.

B.       *Commissioner Hicks, NJDOC, and NJSP*

The Court finds that Plaintiff cannot make out an IIED claim against the remaining Defendants. Plaintiff pleads no facts about Commissioner Hicks that support an IIED claim against him. Plaintiff does not suggest that Commissioner Hicks acted intentionally or recklessly or that his conduct was extreme and outrageous. *See Buckley*, 544 A.2d at 863. For that reason, the Court dismisses Plaintiff's IIED claim against Commissioner Hicks.

Additionally, NJDOC and NJSP cannot be held vicariously liable for Plaintiff's IIED claims against Officers Goodwin and Napierala. Under the NJTCA, "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." *Hoag v. Brown*, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007) (citing N.J. Stat. Ann. § 59:2-10). "Thus, there can be no vicarious liability by a public

18

entity for intentional torts committed by its employees; that is, with respect to such intentional torts, the theory of respondeat superior does not apply." *Id; see also Ward v. Barnes*, 545 F. Supp. 2d 400, 420–21 (D.N.J. 2008) (holding that there is no legal basis under N.J. Stat. Ann. § 59:2-10 for permitting respondeat superior liability to public entities on the theories of battery and intentional infliction of emotional distress).

Here, NJOC and NJSP are public entities, and IIED is an intentional tort. Because NJDOC and NJSP cannot be vicariously liable for IIED, Plaintiff's IIED claim against NJDOC and NJSP is dismissed. *See Pinson v. Perera*, 2020 WL 3542383, at *5 (D.N.J. June 30, 2020) (dismissing plaintiff's IIED claim against NJDOC).

## V.      Negligence

Count 7 of the Amended Complaint alleges Negligence against all Defendants. (Am. Compl. ¶¶ 93–97.) Defendants argue that they are shielded from liability by the NJTCA because their actions arise from a "discretionary government function, which allows employees to utilize their judgment." (Defs.' Br. at 7.)[3]

### A.      *Officers Goodwin and Napierala*

A negligence claim under New Jersey law requires a plaintiff to establish four elements: (1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages. *Fernandes v. DAR Dev. Corp.*, 22 199 A.3d 878, 885–86 (N.J. 2015) (citations omitted). The NJTCA permits a plaintiff to sue a public employee for injuries resulting from negligence. *See Nieves v. Off. of the Pub. Def.*, 230 A.3d 227, 232

---

[3] Defendants also cite the statutory exceptions to the Federal Tort Claims Act, 28 U.S.C. § 2680(a); however, that statute has no bearing here because Plaintiff has not brought claims against any federal agency or employee.

(N.J. 2020). However, a public employee is not liable "if he acts in good faith in the execution or enforcement of any law." N.J. Stat. Ann. § 59:3-3.

Plaintiff has adequately pled his negligence claim against Officers Goodwin and Napierala. The Officers owed Plaintiff a duty to provide him with adequate medical care. *See Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (citations omitted). The Officers may have breached that duty by denying Plaintiff medical care for ninety minutes. (*See* Am. Compl. ¶¶ 29, 95.) Plaintiff states that the denial of his medical care "greatly exacerbated [his] heart condition" and actually and proximately caused his injuries. (*Id.* ¶¶ 31, 45, 97.) And finally, Plaintiff states that he suffered damages in the form of physical injuries. (*Id.* ¶¶ 45–47.)

Moreover, the Court cannot conclude at this stage that Officers Goodwin and Napierala are shielded by the NJTCA, because it is not clear that the Officers "act[ed] in good faith in the execution or enforcement of any law." N.J. Stat. Ann. § 59:3-3. To meet the good faith standard, a public employee "either must demonstrate 'objective reasonableness' or that he behaved with 'subjective good faith.'" *Alston v. City of Camden*, 773 A.2d 693, 703 (N.J. 2001). "The burden of proof is upon the employee, who must prove either of those components in order for the good faith immunity to attach." *Toto v. Ensuar*, 952 A.2d 463, 470 (N.J. 2008). The Amended Complaint supports a plausible inference that the Officers knew Plaintiff was having a heart attack when they delayed his medical treatment. If true, this may preclude a finding that the Officers demonstrated "objective reasonableness" or behaved with "subjective good faith." *See Alston*, 773 A.2d at 703.

B.   *Commissioner Hicks*

Plaintiff alleges no specific facts about Commissioner Hicks' negligence. Plaintiff also does not bring claims for negligent supervision, negligent hiring, or any other tort under New

Jersey law against Commissioner Hicks. Because the claim lacks any factual basis, Plaintiff's negligence claim against Commissioner Hicks is dismissed.

C.      *NJDOC and NJSP*

A public entity may be liable for the negligent actions of their employee if the employee's actions are within the scope of his employment. N.J. Stat. Ann. § 59:2-2(a). However, a public entity is not liable for the acts or omissions of public employees constituting "a crime, actual fraud, actual malice or willful misconduct." § 59:2-10. Additionally, "a public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable." § 59:2-2(b).

Here, Officers Goodwin and Napierala's actions were within the scope of their employment because they were overseeing the collection of an inmate's urine sample at their place of employment and at the direction of an NJSP sergeant. (Am. Compl. ¶ 17.) *See Di Cosala v. Kay*, 450 A.2d 508, 513 (N.J. 1982). Therefore, Plaintiff's negligence claims against NJDOC and NJSP are not barred. However, if the Court subsequently concludes that Officers Goodwin and Napierala were acting with "actual fraud, actual malice, or willful misconduct," *see* N.J. Stat. Ann, § 59:2-10, or that Officers Goodwin and Napierala were not negligent, *see* § 59:2-2(b), then NJDOC and NJSP cannot be liable for the Officers' actions.

Accordingly, the Court denies Defendants' Motion to Dismiss as to the negligence claim against Officers Goodwin and Napierala, NJDOC, and NJSP, and grants the Motion as to the negligence claim against Commissioner Hicks.

## VI.    Punitive Damages

Plaintiff seeks punitive damages against all Defendants. (Am. Compl. at 16.) Defendants argue that all claims for punitive damages should be dismissed. (Defs.' Br. at 18.) The Court concludes that some, but not all, of Plaintiff's claims for punitive damages are barred.

A.    *Officer Goodwin, Officer Napierala, and Commissioner Hicks*

As a preliminary matter, punitive damages cannot be recovered from government defendants in their official capacities. *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). Accordingly, all claims for punitive damages against Officer Goodwin, Officer Napierala, and Commissioner Hicks in their official capacities are dismissed.

Punitive damages may be asserted against public employees in their individual capacities. *Id.* "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "It is generally a question of fact as to whether a defendant's conduct was motivated by an evil motive or involves reckless indifference." *Gaines v. Busnardo*, 2015 WL 5771233, at *8 (D.N.J. Sept. 30, 2015) (citing *Coleman v. Rahija*, 114 F.3d 778, 787 (3d Cir. 1997)). Punitive damages are also available against individual public employees under the NJCRA and the NJTCA. *See Walker v. City of Newark*, 2020 WL 3542502, at *4 (D.N.J. June 30, 2020).

The Court concludes that the actions undertaken by Officers Goodwin and Napierala, taken as true, plausibly support a claim for punitive damages. Accordingly, Defendants' Motion to Dismiss is denied as to Plaintiff's claims for punitive damages against Officers Goodwin and Napierala for any surviving claims against them.

Plaintiff has not stated any claim against Commissioner Hicks. "Punitive damages are a remedy incidental to cause of action, not a substantive cause of action in and of themselves." *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000). Thus, because Plaintiff has no surviving claims against Commissioner Hicks, Plaintiff's claim for punitive damages against Commissioner Hicks is dismissed.

B.    *NJDOC and NJSP*

As state entities, NJDOC and NJSP cannot be sued for any kind of damages under § 1983 or the NJCRA. *See Will*, 491 U.S. at 65; *Est. of Lagano*, 769 F.3d at 856. The Court thus dismisses all § 1983 and NJCRA claims for punitive damages against NJDOC and NJSP. Additionally, NJDOC and NJSP cannot be sued for punitive damages under the NJTCA. The NJTCA states that "[n]o punitive or exemplary damages shall be awarded against a public entity." N.J. Stat. Ann. § 59:9-2(c). A public entity includes the "State . . . public authority, public agency, and any other political subdivision or public body in the State." § 59:1–3. Here, NJDOC and NJSP are public entities within the meaning of the NJTCA. Accordingly, all claims for punitive damages against NJDOC and NJSP are barred and are dismissed.

**VII.   Leave to Amend**

Plaintiff is granted leave to file an amended complaint within thirty (30) days, if he wishes to do so, to cure the Amended Complaint's deficiencies.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint (ECF No. 38) is granted in part and denied in part. An appropriate Order will follow.


Date: <u>January 15, 2020</u>                         <u>/s/ Anne E. Thompson</u>
                                                    ANNE E. THOMPSON, U.S.D.J.